IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL T. LIPSCOMB, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:20cv00411 |
| | ) | |
| v. | ) | |
| | ) | |
| SUPERINTENDANT JAMES F. | ) | |
| WHITLEY, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Plaintiff, Daniel T. Lipscomb, has filed numerous motions that the court has construed and docketed as motions seeking preliminary injunctive relief or a temporary restraining order. Lipscomb has also filed objections to the defendants' opposition to his requests for interlocutory relief. After review of the amended complaint and these motions, the court concludes that these motions must be denied because they concern matters unrelated to the claims in the underlying lawsuit and have been mooted by Lipscomb's transfer.

I.

The amended complaint alleges that officials at the Northwestern Regional Adult Detention Center ("NRADC") maintained Lipscomb for some weeks in segregated confinement without due process under harsh living conditions. The parties have filed cross motions for summary judgment on these issues that will be separately addressed.

Lipscomb's many motions for interlocutory injunctive relief, however, do not concern his segregation claims. In his first motion, Lipscomb wants the court to order Captain Custer, Kim Benson, and other NRADC employees to stop "opening of outgoing Legal Mail and opening of outgoing mail addressed from [Lipscomb] outside [his] presence . . . [d]ue to Retaliation [for his] filing this said lawsuit against [NRADC]." Dkt. No. 47. Lipscomb states that he "has written to

ACLU, NAACP etc. about what's going on here at NRADC and none of the letters have made it to the Businesses."[1] *Id.*

On April 26, 2021, the court docketed a second "motion for injunction relief" from Lipscomb, Dkt. No. 67. This motion alleges that on April 19, 2021, Lipscomb "received a letter returned to sender that [he] wrote to his . . . Attorney, Envelope was marked Legal Mail, Attorney at Law[.] NRADC officer S. Bain opened the letter and scanned [it] onto the Inmate Tablet in violation of Attorney-Client Privilege." Dkt. No. 67. Lipscomb asserts, "This is also done out of Retaliation for filing this lawsuit." *Id.* at 2.

In a third motion for interlocutory injunctive relief, Lipscomb alleges that "[o]n April 21, 22, and 25, 2021, his criminal attorney called the jail to speak to Lipscomb. Each time, an officer told the attorney that Lipscomb was not available to speak to him. Lipscomb denies that he was unavailable on those dates. He asserts, "This is due to Retaliation for [my] lawsuit." Mot. Prelim. Inj. 1, Dkt. No. 70.

Lipscomb later filed a motion seeking a temporary restraining order after Custer transferred him to a "big housing unit," allegedly because of his complaints that his attorney could not reach him by telephone. Mot. Temp. Restr. Ord. 1, Dkt. No. 72. Lipscomb alleges that gang members in the larger housing units have threatened to harm him in the past and that he should be housed in protective custody.

---

[1] In response, Dkt. No. 55, the defendants offer an affidavit from Kim Benson, who has been assigned to monitor inmate mail since January 2020. Normally, NRADC policy authorizes opening of outgoing legal mail only in the inmate's presence, but it allows an officer to open and examine outgoing *nonlegal* mail outside the inmate's presence. Officers will provide a report to the inmate of any confiscated mailing unless doing so would hinder a criminal investigation. Soon after Lipscomb was incarcerated at NRADC in January 2020, Benson received a request from the Commonwealth's Attorney's Office to open and inspect Lipscomb's outgoing *nonlegal* mail. Each time Benson opened and inspected a piece of nonlegal mail, she resealed the envelope and placed the item back in the outgoing mail system. She states that, at no time, did her actions delay the processing of outgoing mail, and that she did not confiscate any of Lipscomb's outgoing mail, legal or nonlegal. Clay Corbin, the interim superintendent of NRADC, reports no evidence indicating that any of Lipscomb's *outgoing mail, legal or nonlegal*, was confiscated by anyone or that outgoing legal mail has been opened outside of his presence.

In Lipscomb's fourth motion for interlocutory relief, Dkt. No. 76, he complains that after his transfer to a bigger housing unit, he lost many privileges (such as out-of-cell time, television and radio time, and outside recreation). When he complained, he was told that an investigation into appropriate housing for him was ongoing. Meanwhile, Lipscomb asserts that the loss of privileges was retaliation for his lawsuit.[2]

In mid-May 2021, officials transferred Lipscomb to the Rappahannock Shenandoah Warren Regional Jail ("RSWRJ"). Lipscomb immediately filed more motions for interlocutory relief, asking the court to order that he be transferred back to NRADC. He complains that he has no criminal charges pending in the area where RSWRJ is located, that he is confined under a higher level of security at the new facility, and that he does not have access to his legal paperwork related to this civil action. He also asserts that the transfer occurred without due process protections and that he cannot visit with his attorney or his family at the new facility.

II.

The party seeking preliminary injunctive relief must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of these four factors must be satisfied. *Id.* "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with the [Supreme Court's] characterization of injunctive

---

[2] In response to Lipscomb's complaints about being transferred to a bigger housing unit, in Dkt. No. 75, Custer has explained that in such housing units, an officer ensures that each inmate receives any calls from his attorney, except during lockdowns. In smaller units, however, inmates must assist each other in receiving calls from their attorneys. Custer states that when he recommended moving Lipscomb to a larger unit, he did not know of any inmates there who had made threats against Lipscomb. Classification staff also checked for such threats before approving the move. Nevertheless, investigators continued to assess possibly moving Lipscomb to a protective custody unit until he was transferred to a different jail facility.

relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[3] *Id.*

Most importantly, Lipscomb's motions for interlocutory relief are not properly raised in this lawsuit, which contends that his long-term confinement in segregation violates his constitutional rights. "[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel v. TWA*, 111 F.3d 14, 16 (4th Cir. 1997). To warrant interlocutory relief, the movant "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Id.* Lipscomb's motions fail to state facts showing that his missing or opened mail, his missed attorney calls, or his housing reassignments were caused by the same conduct alleged against the defendants in his § 1983 complaint about being in long-term segregated confinement without due process.

Second, now that Lipscomb is no longer housed under the conditions of which he complained while at NRADC, his motions for interlocutory injunctive relief to alleviate those conditions must be dismissed as moot. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007) ("Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim."). Lipscomb has not moved to amend his pleading to add claims of retaliation, interference with legal mail or attorney

---

[3] Lipscomb has also requested a temporary restraining order ("TRO"). TROs are issued only rarely, when the movant proves that he will suffer injury if relief is not granted before the adverse party could be notified and have opportunity to respond. *See* Fed. R. Civ. P. 65(b). Such an order would only last until such time as a hearing on a preliminary injunction could be arranged. As it is clear from the outset that Lipscomb is not entitled to a preliminary injunction, the court finds no basis upon which to grant him a TRO.

4

calls, or transfer to allegedly unsafe conditions in the larger housing unit while he was at NRADC. Moreover, these allegations concern events that occurred after he filed the lawsuit. Therefore, he could not have complied with the requirement to exhaust administrative remedies, *see* 42 U.S.C. § 1997e(a), as to these claims before bringing the suit. Moreover, until an inmate has fully advised jail officials of his issues through the available grievance procedure and appeals, to permit them an opportunity to alleviate his concerns, it is doubtful that he can prove how he will suffer irreparable harm in the absence of court intervention, one of the *Winter* factors.

Third, the court also cannot find that Lipscomb has met the first *Winter* factor. Specifically, the court cannot find from his allegations any likelihood of success on the merits of his claims of retaliatory interference with his mail or his telephone calls from his attorney or retaliatory housing reassignment decisions. Lipscomb states no facts showing that the failure of two outgoing letters to reach their addressees occurred because any jail official interfered with those mailings, as opposed to some other cause, such as the widely reported problems with mail delivery through the United States Postal Service.[4] Thus, Lipscomb's accusations that jail officials somehow prevented his letters from being delivered to retaliate against him are based on nothing more than speculation. Similarly, he states no facts supporting his bald declarations that Custer or any other jail official took actions purposely directed to preventing Lipscomb from receiving particular calls from his attorney or to placing him in a housing assignment where he was in danger of harm from specific other inmates. Lipscomb's merely conclusory allegations of retaliation are not sufficient to state a *prima facie* claim under § 1983. *See Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994) (finding § 1983 retaliation claim was properly dismissed where

---

[4] *See, e.g.,* https://www.npr.org/2021/01/22/959273022/theres-no-end-in-sight-mail-delivery-delays-continue-across-the-country (last visited July 2, 2021).

5

plaintiff provided only conclusory assertion of retaliation with no facts to show alleged retaliatory act was connected to exercise of constitutional right). Moreover, Lipscomb has no constitutionally protected right to be housed in any particular jail facility or to receive procedural protections before a transfer to a prison with more restrictive conditions. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (finding no liberty interest in avoiding interstate prison transfer); *Meachum v. Fano*, 427 U.S. 215, 223-224 (1976) (finding that inmates had no liberty interest in avoiding transfer from medium to maximum security prison or in being transferred only after proven, serious misconduct).[5]

For the reasons stated, the court cannot find that Lipscomb is entitled to the extraordinary, interlocutory remedy he is seeking and will deny his motions. An appropriate order will enter this day.

Entered: July 8, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[5] For these same reasons, the court declines to construe Lipscomb's motions as attempted amendments seeking to add new claims or defendants to the amended complaint.